NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0291n.06

No. 13-6320

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Apr 21, 2015
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| MARIAN CURRY, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | On Appeal from the United States |
| | ) | District Court for the Eastern |
| v. | ) | District of Kentucky |
| | ) | |
| KENNETH BROWN, et al., | ) | OPINION |
| | ) | |
| Defendants-Appellees. | ) | |
| | ) | |

BEFORE:    BOGGS and DONALD, Circuit Judges; HOOD, District Judge.[*]

**HOOD, District Judge**.  Appellant Marian Curry ("Curry") appeals the Judgment and Order granting Defendants Kenneth Brown's and Boone County's Motion for Summary Judgment as to Curry's retaliation and disability-discrimination claims under the Family and Medical Leave Act ("FMLA").  For the reasons set forth below, the district court's judgment is AFFIRMED.

**I.**

On June 25, 2012, Curry filed a Complaint against Brown and Boone County, Kentucky, alleging five counts: violation of 42 U.S.C. § 1983 (Counts I and II); discrimination in violation of Ky. Rev. Stat. Ann. § 344.010 *et seq.* (Count III); interference with rights under the FMLA and retaliation for exercising those rights (Count IV); and discrimination based on gender and

_____

[*]The Honorable Denise Page Hood, United States District Judge for the Eastern District of Michigan, sitting by designation.

disability in violation of 42 U.S.C. § 2000e-2 and Ky. Rev. Stat. Ann. § 344.040 (Count V). On April 4, 2013, pursuant to the parties' stipulation, the district court dismissed Counts I-III, and the gender-discrimination claim in Count V. On September 9, 2013, the district court entered an order granting Brown's and Boone County's Motion for Summary Judgment, dismissing the remaining claims of FMLA interference and retaliation and disability discrimination.

In 1999, Curry began working for the Boone County Clerk's Office as a deputy clerk. Curry was diagnosed with breast cancer and underwent a double mastectomy in 2010. She was approved for leave under the FMLA, but she did not have to use unpaid FMLA leave because her co-workers donated paid sick days to her.

Brown was elected Boone County Clerk in a 2010 general election. After the election, Brown conducted one-on-one interviews with his staff to orient himself with both personnel and operations. Brown asserts that during the interviews several deputy clerks noted serious concerns regarding Curry's behavior at work. There were allegations that Curry was verbally and physically abusive to other clerks. On February 1, 2011, Brown discussed these allegations with Curry, which Curry denied. At the end of the meeting, Brown instructed Curry to take three days of paid administrative leave while he looked into the matter further. Curry then told Brown, "I was told that you were a good guy and honest and I voted for you." Brown found this statement odd since he believed Curry did not live in Boone County, but in Grant County.

Brown met with Curry again on February 4, 2011 to discuss the allegations by her co-workers, with Motor Vehicle Supervisor Kathy Conrad present at the meeting. Curry indicated that she believed the allegations were concocted by her co-workers. Brown then told Curry that he was demoting Curry from her supervisor position and transferring her from the Florence office to the Burlington office. Brown told Curry to concentrate on recovery from her illness and

not concern herself with supervising others. Curry's responsibilities were diminished and a cut in her pay was to become effective March 1, 2011.

Following this February 4, 2011 meeting, Brown asked Voter Registration Supervisor Rick Riddell to examine Curry's voting record and to follow up on Curry's statement made during the February 1, 2011 meeting. Curry's voting records showed that Curry voted in Boone County in the 2008 and 2010 elections. Brown then contacted the County Attorney for advice on how to proceed.

On February 8, 2011, Brown called Curry into his office and asked where she lived and where she voted. Curry responded that she lived in Grant County and voted absentee in Boone County. Curry claims she was unaware that she had done anything wrong. Brown then notified Curry that she had committed a Class D Felony. Curry looked at Riddell, who was present at the meeting, but did not say anything. Curry claims that Riddell knew she was voting in Boone County since she voted at the office, but no one asked her for her identification and they knew she did not live in Boone County. Curry was suspended at the end of the meeting and later received a termination letter dated February 10, 2011. The termination letter from Brown stated that Curry was terminated for violating Ky. Rev. Stat. Ann. § 119.025 (wrongful registration) and § 119.135 (false presentation of voter-nonresident or unqualified person voting). Brown noted that, "[t]he violation of any laws by a Deputy County Clerk compromises the integrity of the Boone County Clerk's Office and the election process in the County and cannot be tolerated."

Curry was indicted by the Boone County Grand Jury on February 15, 2011 on one count of wrongful registration, in violation of Ky. Rev. Stat. Ann. § 119.025. Curry entered a guilty plea on March 30, 2011 and was referred to the felony diversion program.

The instant suit was filed by Curry on June 25, 2012. Curry obtained discovery documenting that, until 2007, Brown had resided with his mother at a Gloucester Drive, Florence, Kentucky address, the address on his voting registration through the November 2008 general election. Brown had purchased a home on Hampshire Place, Florence, Kentucky on July 26, 2007. Brown testified at his deposition that the Hampshire Place house remained unoccupied during renovation until December 2008, when he moved there from his mother's house. In the 2011 primary, Brown voted absentee using the Hampshire Place address.

Discovery also revealed that Linda Buchanan Smith, a Boone County deputy clerk, moved from her home at Campaign Drive in Hebron, Kentucky, to Clearbrook Drive, Burlington, Kentucky in September 2010. Smith voted in the November 2010 election at the Hebron precinct. Smith changed her driver's license information in March 2011.

## II.

## A.

We review *de novo* the district court's grant of summary judgment. *Blackmore v. Kalamazoo Cnty.,* 390 F.3d 890, 894 (6th Cir. 2004). Summary judgment is appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A defendant bears the initial burden of showing the absence of a genuine dispute of material fact as to at least one essential element of a plaintiff's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The plaintiff must then present sufficient evidence from which a jury could reasonably find in plaintiff's favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). We must then consider whether, drawing all reasonable inferences in favor of the plaintiff, the defendant must prevail as a matter of law. *Harrison v. Ash*, 539 F.3d 510, 516 (6th Cir. 2008).

**B.**

Curry argues that the district court erred in finding that she did not present direct evidence showing that Brown's statement at the February 4, 2011 meeting—that Curry should concentrate on her recovery and not concern herself with supervising others—was evidence of direct discrimination under the FMLA. Brown and Boone County respond that the district court properly found that Brown's statement was not direct evidence of discrimination, but merely a conciliatory statement to Curry regarding her health.

The FMLA permits eligible employees to take up to twelve weeks of unpaid leave during any 12-month period for family or medical reasons. 29 U.S.C. § 2612. The FMLA prohibits "any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right" provided under the statute. 29 U.S.C. § 2615(a)(1). The FMLA also prohibits "any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful" under this statute. 29 U.S.C. § 2615(a)(2). Two discrete theories of recovery under these two sections are recognized: 1) the so-called "interference" or "entitlement" theory under § 2615(a)(1), and 2) the "retaliation" or "discrimination" theory under § 2615(a)(2). *Seeger v. Cincinnati Bell Tel.*, 681 F.3d 274, 282 (6th Cir. 2012).

The central issue under the retaliation or discrimination theory is whether the employer took the adverse action because of a prohibited reason or for a legitimate, non-discriminatory reason. *Id.* The employer's motive is an integral part of the analysis in a retaliation or discrimination theory because claims under this theory seek to impose liability on an employer that acts against an employee specifically *because* the employee invoked FMLA rights. *Edgar v. JAC Prod., Inc.*, 443 F.3d 501, 508 (6th Cir. 2006). An employer is prohibited from discriminating against employees who have used FMLA leave and may not use the taking of the

FMLA leave as a negative factor in employment actions. *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 706-07 (6th Cir. 2008). Direct evidence of discrimination "must establish not only that the plaintiff's employer was predisposed to discriminate on the basis of [the FMLA], but also that the employer acted on that predisposition." *Id.* at 707 (quoting *DiCarlo v. Potter*, 358 F.3d 408, 415 (6th Cir. 2004)). "[G]eneral, vague, or ambiguous comments do not constitute direct evidence of discrimination because such remarks require a factfinder to draw further inferences to support a finding of discriminatory animus." *Id*. at 708.

Curry asserts that when Brown demoted and transferred her, he told her that she "needed to focus on her health problems, transfer to Burlington and it would be less stressful." (Brown's Notes, Page ID #68) Brown testified at his deposition that he told Curry "she should probably focus on her health rather than worry about the stress of supervising people." Curry claims that Brown's statement is direct evidence that he demoted Curry because she exercised her FMLA rights. The district court found Brown's statement could not be considered direct evidence because the statement required further inferences to support a finding of discriminatory animus.

Curry argues that the trial court incorrectly found that Brown's statement was not direct evidence because Brown's statement that Curry "should probably focus on her health rather than worry about the stress of supervising people," does not require a factfinder to draw any inferences of discriminatory animus. On appeal, Curry cites three cases to generally support her position that Brown's statement is direct evidence of discrimination.

In *Chattman v. Toho Tenax Am., Inc.*, 686 F.3d 339 (6th Cir. 2012), a race-discrimination case, we reversed the district court's grant of summary judgment to the employer, 686 F. Supp. 2d 754 (E.D. Tenn. 2010), and held that the employer's statements identified by the plaintiff were "racist comments" showing racial animus towards African Americans:

> In the Spring of 2007, Tullock told a "joke" that O.J. Simpson was innocent and that Nicole Brown was killed by their son because O.J. Simpson responded to a question from his son by answering "go axe your mother." Around February 2008, Tullock responded to another employee's complaint that her son had gotten into trouble at school for fighting by saying "you know what my grandmother always says about boys scuffling? That's how the nigger graveyard got full." A few days later, Tullock commented about then-Presidential-candidate Barack Obama by saying "well you better look close at Obama's running mate because Americans won't allow a nigger president."

*Id.* at 343, 347. The statement by Brown in this case does not rise to the same level as the statements in *Chattman* because Brown's statement requires a factfinder to further infer discriminatory animus against Curry for taking FMLA leave.

We found in *Sharp v. Aker Plan Servs. Group, Inc.*, 726 F.3d 789 (6th Cir. 2013), an age-discrimination case, that a supervisor's remarks that a younger person was retained because of his age were direct evidence of discriminatory animus. The remarks were offered to explain the very decision at the heart of the lawsuit and the rationale for choosing which employees to fire and which to retain. *Id.* at 798. These remarks were sufficient to establish direct evidence of discriminatory animus based on age:

> Sharp: It just concerns me that someone was brought in younger specifically to take Larry [Ash]'s place. Like you said[,] it was unfortunate for John [the other terminated E & I designer] and myself.
>
> Hudson: It is the fact that he is younger.
>
> . . .
>
> Hudson: And you're gonna bring in the guy that's going to give you [sic] additional ten, twelve years or whatever, after, you know, we're gone or if Larry's gone.
>
> . . .

> Sharp: Yeah, [l]ike I said Thursday, you know, it concerned me when you all brought Bill in, in the first place[,] you know, and said[,] you know, this is going to be Larry's replacement. Because I saw a definitely [sic] change in my status when you all did that. I mean cause I was checking Larry's packages, I felt like I was the number two guy, at that point, and[,] you know[,] at some point[,] you know[,] I stopped checking Larry's packages, because Bill was being groomed to do that.
>
> . . .
>
> Hudson: [A]nd his age, and where he was in his career, just all everything just aligned right, that he was [sic] a good spot in his career to do that.

*Id.* at 795-96. Brown's statement that Curry focus on her health rather than worry about the stress of supervising others also does not rise to the same level as the statements in *Sharp*. Brown's statement does not refer to Curry taking FMLA leave as a reason for her transfer. In *Sharp*, the supervisor admitted that a younger person was retained because of his age.

In *Christopher v. Stouder Mem. Hosp.*, 936 F.2d 870 (6th Cir. 1991), direct evidence was found to support a retaliation claim by the plaintiff who was denied privileges as a nurse at the defendant hospital based on a memorandum by a member of the executive committee and two discussions the plaintiff had with a member of the committee and the president of the hospital. The memorandum to the executive committee referenced plaintiff's prior sex-discrimination lawsuit against a different hospital. *Id.* at 873. The plaintiff had attempted to negotiate the issue of her privileges with the president of the hospital, who indicated, "[i]f you hadn't had some legal action prior to this, this might not have occurred." *Id.* A committee member told the plaintiff that "she was having difficulties because of her prior legal action" at the other hospital. *Id.* at 873-74. We found these statements to be direct evidence of retaliation that plaintiff was denied privileges because of the previously-filed sex-discrimination lawsuit. *Id.* at 879. Brown's statement in this case that Curry needed to focus on her health problems does not make

reference to Curry taking FMLA leave. In contrast, in *Christopher*, the statements expressly referred to a prior lawsuit as a reason for denying the plaintiff privileges.

Brown's statement, as argued by Defendants, could instead be inferred as conciliatory in that Brown was encouraging Curry to think about her health and that the transfer would mean less stress at work. It cannot necessarily be inferred from the statement that Curry's demotion and transfer were the result of Curry taking FMLA leave. The statement requires further inference that Brown discriminated against Curry because she took FMLA leave.

In *Clark v. Walgreen Co.*, 424 F. App'x 467 (6th Cir. 2011), we found the comment that "because of your health, we're just going to go ahead and terminate you," did not compel the conclusion that the plaintiff was fired in connection with taking a leave. *Id.* at 472. Instead, we found the comment was not direct evidence of discrimination since it appeared to address the plaintiff's *post*-leave job performance as a function of the plaintiff's health. *Id.* The statement by Brown in this case is similar to the comment in *Clark* in that the statement also appears to address Curry's post-leave job performance as a function of plaintiff's health. It cannot be inferred from the statement that Curry's FMLA leave prompted Curry's demotion and transfer. The district court's finding that the statement by Brown was not direct evidence of discrimination under the FMLA is affirmed.

### C.

Curry also claims the district court erred in finding that Brown and Linda Smith were not similarly situated to Curry, where Brown and the other subordinate allegedly committed the same criminal violation as Curry by voting in a precinct where they did not reside, but were not indicted or convicted. Brown and Boone County respond that the district court correctly ruled that Brown and Smith were not similarly situated to Curry.

A plaintiff asserting an FMLA claim of discrimination or retaliation through indirect or circumstantial evidence must establish a prima facie case under the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) burden-shifting framework. *Seeger*, 681 F.3d at 283. To establish a prima facie case of discrimination or retaliation under the FMLA, a plaintiff must show: 1) she was engaged in an activity protected by the FMLA; 2) the defendant knew she was exercising a protected right; 3) she suffered an adverse employment action; and 4) a causal connection between the protected activity and the adverse employment action. *Id.* Only minimal credible evidence is required to carry the burden of proof at the prima facie stage. *Id.* Once a plaintiff has established a prima facie case, then the next step of the *McDonnell Douglas* analysis is whether the defendant has articulated a legitimate, nondiscriminatory reason for the adverse action. *Id.* at 284. A plaintiff then must produce adequate evidence demonstrating that the defendant's proffered reason was pretext for discrimination. *Id.* Pretext may be established by showing that the defendant's proffered reasons: 1) have no basis in fact; 2) did not actually motivate the action; or 3) were insufficient to warrant the action. *Id.* at 285. Pretext cannot be established "'unless it is shown both that the reason was false, and that discrimination was the real reason.'" *Id.* (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993)).

The district court and the parties did not address whether a prima facie case under *McDonnell Douglas* was established by Curry because Curry instead claimed direct evidence of discrimination under the FMLA. Curry raised the "similarly-situated" argument in the context of arguing that Brown's and Boone County's proffered reason for Curry's termination, that she committed a felony by voting in a precinct where she did not reside, was mere pretext. Curry claims that Brown and Smith were not disciplined even though they voted in precincts where

they did not reside. Curry appears to be asserting the "no basis in fact" method to demonstrate pretext.

Where an employer can demonstrate an honest belief in its proffered reasons, the inference of pretext is not warranted. *Id.* at 285 (quoting *Joostberns v. United Parcel Servs., Inc.*, 166 F. App'x 783, 791 (6th Cir. 2006)). Bare assertion that the employer's proffered reason has no basis in fact is insufficient and fails to create a genuine issue of material fact. *Id.* A plaintiff must show "more than a dispute over the facts upon which the discharge was based." *Id.* (quoting *Braithwaite v. Timken Co.*, 258 F.3d 488, 493-94 (6th Cir. 2001)). As long as the employer held an honest belief in its proffered reason, "the employee cannot establish pretext even if the employer's reason is ultimately found to be mistaken, foolish, trivial, or baseless." *Id.* at 286 (quoting *Smith v. Chrysler Corp.*, 155 F.3d 799, 806 (6th Cir. 1998)).

Brown's and Boone County's proffered reason for Curry's termination is her admission that she voted in Boone County elections even though she had resided in Grant County since 2006. Curry claims she did not know she was doing anything illegal and that the Boone County Clerk's Office personnel knew she did not reside in Boone County, yet she was allowed to vote in Boone County. Brown and Boone County assert that in Kentucky, the Boone County Clerk, here Brown, is charged with the responsibility for administering and maintaining the integrity of elections in Boone County. Ky. Rev. Stat. Ann., Chapters 116-120. The termination letter sent to Curry stated that because the Boone County Clerk was charged with this duty, he could not employ a person who knowingly violates election law. As the district court stated: "It would strain credulity to accept that the Boone County Clerk—the elected official charged with voter registration in Boone County—would not terminate an employee who admits to illegal voting." (Opinion, Pg ID # 546).

-11-

Curry attempts to show pretext by claiming that Brown and a co-worker, Linda Smith, also voted in a precinct where they did not reside and were not indicted, nor disciplined in any way. However, in cases involving circumstantial evidence of discrimination, claims of differential treatment from "similarly situated" employees are generally addressed as part of a prima facie case, not in the pretext portion of the analysis. *See Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998).

At the pretext stage of the analysis, Curry must show "more than a dispute over the facts upon which the discharge was based." *Seeger*, 681 F.3d at 285. In this case, Curry admitted to Brown that she voted in Boone County even though she had not lived in Boone County since 2006. There is no dispute over the facts upon which the discharge was based. Even assuming Curry could establish a prima facie case of discrimination, Curry cannot establish pretext to rebut the proffered reason for her termination by Brown and Boone County. Curry's "similarly-situated" arguments as to Brown and Smith are not relevant. Summary judgment against Curry on this issue is affirmed.

**III.**

For the reasons set forth above, we AFFIRM the district court's entry of summary judgment against Curry.