MARVIN E. ASPEN, District Judge:
*964 Plaintiff Tina Y. Bruce filed a complaint against her former employer Defendant Levy Premium Foodservices Limited Partnership ("Levy") on October 18, 2016. (Compl. (Dkt. No. 1) ¶¶ 4-5.) Bruce claims Levy violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. , by discriminating against her based on her gender and retaliating against her for reporting the sexual harassment of a coworker. (Id. ¶¶ 50-68.) Presently before us is Levy's motion for summary judgment. (Mot. for Summ. J. ("Mot.") (Dkt. No. 34).) We hereby grant Levy's motion for summary judgment as to Count I, which Bruce concedes should be dismissed. (See Resp. (Dkt. No. 39) at 3-4.) For the following reasons, we deny Levy's motion for summary judgment as to Count II.
The trial date remains set for April 16, 2019. (Dkt. No. 54.) In preparation for trial, the parties shall file pretrial materials by the deadlines set forth below.
BACKGROUND
Unless otherwise noted, the facts described herein come from the parties' statements of fact and are undisputed. Levy "provides food and beverage services to the suites at the Bridgestone Arena" in Nashville, Tennessee. (Statement of Material Uncontested Facts ("SOF") (Dkt. No. 35) ¶ 1.) Levy hired Bruce on February 1, 2005 to work seasonally as a suite attendant during events at Bridgestone Arena. (Id. ¶¶ 15-18.) These events included Nashville Predators hockey games, concerts, and other events. (Id. ¶ 18.) During events, Bruce coordinated food and beverage service for assigned suites, including setting up and restocking food and beverage during events, and cleaning up the suites. (Id. ¶ 19.) Levy paid Bruce $10.00 an hour in addition to gratuities she received from her suite patrons. (Id. ¶ 20.) In her 2014 performance evaluation dated January 28, 2015, Tim Halterman, General Manager of the Suites, indicated Bruce's performance was "outstanding" or "very good" in ten out of fourteen categories under review. (SOF ¶ 22; Pl.'s Statement of Additional Uncontested Facts ("PSAF") (Dkt. No. 40) ¶¶ 22-23 (citing Jan. 2015 Review (Dkt. No. 41-8).)
The relevant events to this case began in November 2014, when Jacob Caffey, also a suite attendant, returned to work for Levy at Bridgestone after an extended medical leave of absence. (SOF ¶¶ 32-34.) Shortly after Caffey returned, sometime in November or December 2014, Bruce alleges Caffey began harassing another suite attendant, Kayla Costley. (Id. ¶ 37.)[1] Bruce initially heard of the harassment from Costley's mother, who is Bruce's friend, and later personally witnessed Caffey make repeated sexual statements and gestures towards Costley. (Id. ¶¶ 37-39; PSAF ¶¶ 4-5.) Based on these observations, Bruce told Caffey to leave Costley alone, which led to conflict between Bruce and Caffey. (SOF ¶¶ 40-41; PSAF ¶¶ 10-11.) At some point, the timing of which is disputed, Bruce complained about Caffey's harassment of Costley to Halterman.[2] (Resp. to SOF (Dkt. No. 42) ¶¶ 22, 42;
*965 Dkt. No. 34-9 (February 20, 2018 email from Bruce to Halterman discussing conversation about Caffey).) After Bruce's complaint, Levy terminated Caffey on February 25, 2015. (SOF ¶ 44.)
In the months after Bruce's complaints and Caffey's termination, Bruce claims Halterman's demeanor changed towards her. (SOF ¶ 55.) Specifically, Bruce claims Halterman assigned suites to suite attendants in a manner that was disadvantageous to her, which Bruce complained about to Halterman and Kim Dallaire, Senior Office Manager, and to Levy in an anonymous letter from a "concerned co-worker." (Id. ¶¶ 55, 58-60, 65; April 2015 Letter (Dkt. No. 34-12) (alleging Halterman's favoritism towards certain employees).) Paula Meyer, Levy's Regional Human Resources Manager, investigated the complaints in Bruce's "concerned co-worker" letter and determined the allegations against Halterman were "meritless." (SOF ¶ 66.)
In the same period, Levy received a number of complaints about Bruce. On February 28, 2015, Levy received a complaint from a Levy employee that Bruce and a fellow attendant, Cassie Coleman, made racist comments[3] about suite customers during a Charlie Wilson concert a few days earlier. (Id. ¶¶ 68-69.) While investigating this allegation, on March 1, 2015, Meyer and Crystal Parfitt, Director of Operations for Levy at Bridgestone, received three additional statements from Levy team members[4] complaining about Bruce's workplace conduct. (Id. ¶¶ 22, 74.) The coworker statements reported that Bruce had spoken to suite runners in "a rude and unprofessional manner," accused a coworker of smoking marijuana, made false accusations, and bragged she would call the corporate office to get coworkers in trouble.[5] (Id. ¶¶ 22, 75-77.) Based on the Charlie Wilson concert complaint, on March 19, 2015, Meyer, Parfitt, and Dallaire met with Bruce and issued her a written warning. (Id. ¶¶ 72-73, 78.) In addition, between February 24 and April 17, 2015, Halterman gave Bruce three verbal warnings for clocking in early or late.[6] (Resp. to PSAF (Dkt. No. 47) ¶¶ 27-29.)
On April 9, 2015, Emily Roebuck reported to Dallaire that she found a recording *966 device in the Bridgestone pantry inside Bruce's purse; Dallaire reported the issue to Parfitt and Meyer. (SOF ¶¶ 83-84.) After receiving Roebuck's April 9, 2015 complaint, Levy received additional statements about Bruce's "bullying" and "threatening" workplace behavior from coworkers Coleman and Shawna Jones; Bruce denies she ever harassed or bullied Jones. (Resp. to SOF ¶¶ 87-93, 97.)
Meyer and Parfitt began investigating Roebuck's complaint about Bruce's recording activities, including taking statements from Bruce, Roebuck, and Costley, whom Roebuck claims witnessed her discovering the recording device in Bruce's purse. (SOF ¶ 85.) Roebuck alleged Bruce had been recording Levy employees in the pantry when Bruce was not present and without the consent of anyone who was present. (Id. ¶ 86.) Bruce admits she recorded others in the workplace, but denies doing so outside her presence. (Id. ¶ 97; Bruce Decl. (Dkt. No. 41-18) ¶ 7 ("If I was recording, I always had the recorder on my person and in my apron. If I wasn't using it, it would be turned off in my purse ....").) On April 25, 2015, Levy suspended Bruce while the company investigated the recording device allegations. (SOF ¶ 94.)
During the days before her termination, on April 20, 2015, Bruce began contacting Rich Johns, Levy's Regional Director of Operations based in Atlanta, Georgia, by email and phone. (PSAF ¶¶ 62-68.) In emails sent on April 20 and April 24, 2015, Bruce sent Johns emails stating she was experiencing retaliation from her coworkers for speaking up about sexual harassment. (Id. ¶¶ 63-64.) On April 21, 2015, Bruce spoke on the phone with Johns. (Id. ¶ 65.) While the parties dispute some specific details of their conversation, they agree that Bruce and Johns discussed reporting sexual harassment, and that she told Johns "she was recording conversations in the workplace" to "prove [her] innocence." (Id. ¶¶ 66, 68.) Levy submits, however, that there is no evidence the "decisionmakers," presumably those deciding whether to suspend and terminate Bruce, were aware of Bruce's contact with Johns. (Resp. to PSAF ¶ 65.)
On May 5, 2015, Parfitt, Dallaire, and Meyer told Bruce she was terminated from Levy. (SOF ¶ 101.) While the parties agree Meyer and Parfitt were involved in the decision to terminate Bruce, the parties dispute Halterman's role in her termination.[7] (Resp. to. SOF ¶¶ 98, 100-101.) They also dispute the cause of Bruce's termination: Levy maintains Bruce was terminated because of her bullying behavior and Bruce's recording in the workplace. (Id. ¶ 98.) Bruce, however, claims Levy terminated Bruce out of retaliation for reporting Caffey's sexual harassment of Costley. (Id. )
Bruce filed a complaint with the Equal Employment Opportunity Commission ("EEOC") on September 21, 2015, and Bruce received a Dismissal and Notice of Rights letter from the EEOC on July 29, 2016. (SOF ¶ 103; Compl. ¶ 8.) Bruce filed the instant suit against Levy[8] on October 18, 2016 alleging sexual harassment (Count *967 I) and retaliation (Count II) under Title VII. (SOF ¶ 103; Compl. ¶¶ 50-68.) On January 22, 2018, Levy filed a motion for summary judgment, asserting Bruce did not assert she was personally sexually harassed and that Bruce was not terminated out of "retaliatory animus." (Mem. in Support of Mot. for Summ. J. ("Mem.") (Dkt. No. 36) at 2.) In her response, Bruce concedes that her harassment claim should be dismissed, but argues her retaliation claim should survive summary judgment because Levy's stated explanations for her termination-reported bullying of coworkers and recording at work-are pretextual reasons for her termination. (Resp. at 3, 10-17.)
LEGAL STANDARD
Based on Federal Rule of Civil Procedure 56(a), the court will grant a motion for summary judgment if "there are no genuine issues of material fact for trial" and the moving party is entitled to judgment as a matter of law. Ferrari v. Ford Motor Co. , 826 F.3d 885, 891 (6th Cir. 2016) ; Pigott v. Battle Ground Acad. , 909 F.Supp.2d 949, 956 (M.D. Tenn. 2012). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc. , 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "Where the movant has satisfied this burden, the nonmoving party cannot 'rest upon its ... pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial.' " Jaszczyszyn v. Advantage Health Physician Network , 504 F. App'x 440, 446 (6th Cir. 2012) (citing Moldowan v. City of Warren , 578 F.3d 351, 374 (6th Cir. 2009) ). " 'The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient,' and the party's proof must be more than 'merely colorable.' " Hawkins v. Ctr. for Spinal Surgery , 34 F.Supp.3d 822, 833 (M.D. Tenn. 2014) (citing Anderson , 477 U.S. at 252, 264, 106 S.Ct. at 2512, 2518 ). "Conclusory allegations and subjective perceptions or assessments do not constitute evidence 'sufficient to stave off summary judgment.' " Cook v. McHugh , 193 F.Supp.3d 866, 871 (M.D. Tenn. 2016) (citing Wade v. Knoxville Utils. Bd. , 259 F.3d 452, 463 (6th Cir. 2001) ). When considering a motion for summary judgment, we view the facts and make reasonable inferences in the light most favorable to the nonmoving party. Ferrari , 826 F.3d at 891.
ANALYSIS
Bruce admits in her response that her sexual harassment claim (Count I) should be dismissed. (Resp. at 3-4.) Based on this admission, the parties only disagree whether material disputes exist about Bruce's Title VII retaliation claim (Count II) such that Bruce should survive summary judgment.[9]
Remaining is Bruce's second claim, which alleges Levy violated Title VII when *968 it terminated her because of her complaints about Caffey's sexual harassment of her female coworker, Costley. (Compl. ¶¶ 60-68.) Title VII prohibits retaliation by employers against an employee that has resisted discrimination. 42 U.S.C. § 2000e-3(a). The Supreme Court has directed that Title VII's anti-retaliation provision should be interpreted "to provide broad protection from retaliation" because "Title VII depends for its enforcement upon the cooperation of employees who are willing to file complaints and act as witnesses." Burlington N. & Santa Fe Ry. Co. v. White , 548 U.S. 53, 67, 126 S.Ct. 2405, 2414, 165 L.Ed.2d 345 (2006) ("Interpreting the antiretaliation provision to provide broad protection from retaliation helps ensure the cooperation upon which accomplishment of the Act's primary objective depends.").
On summary judgment, if a plaintiff alleges no direct evidence as is the case here, the plaintiff first has the burden of establishing a prima facie case of retaliation under Title VII. Smith v. City of Salem , 378 F.3d 566, 570 (6th Cir. 2004). In the Sixth Circuit, a prima facie retaliation claim requires a plaintiff to demonstrate at summary judgment that (1) she engaged in protected activity under Title VII, (2) the defendant-employer knew she engaged in this protected activity, (3) the defendant-employer then took an adverse employment action against plaintiff, and (4) there was a causal connection between the protected activity and the adverse employment action. Id. If a plaintiff establishes a prima facie case of retaliation by a preponderance of evidence, the burden then shifts to defendant to produce a legitimate, non-discriminatory reason for the adverse employment action. EEOC v. Ford Motor Co. , 782 F.3d 753, 767 (6th Cir. 2015). "If the defendant meets its burden, the plaintiff must prove the given reason is pretext for retaliation." Id.
I. PRIMA FACIE CASE AND ARTICULATION OF NON-DISCRIMINATORY REASONS FOR TERMINATION
In this case, Levy admits for the purposes of summary judgment that Bruce has established a prima facie retaliation claim. (Mem. at 8.) The burden then shifts to Levy to articulate at least one non-retaliatory reason for Bruce's termination.[10] See Reeves v. Sanderson Plumbing Prod., Inc. , 530 U.S. 133, 142, 120 S.Ct. 2097, 2106, 147 L.Ed.2d 105 (2000) ("This burden is one of production, not persuasion; it can involve no credibility assessment.") (internal citation omitted). Levy offers two reasons for Bruce's termination: Bruce's alleged bullying behavior of other Levy employees and her use of a recording device in the workplace, which Levy argues violates both Tennessee law[11] and *969 Levy company policy. (Mot. at 8-9.) While Bruce does not challenge the facial legitimacy of Levy's proposed reasons for her termination, we have our doubts about whether Levy's stated reason involving Bruce's alleged hostile behavior in the workplace is truly non-discriminatory. Specifically, several behaviors Levy describes as bullying and hostile could be interpreted as perpetuating gender stereotypes about women, specifically that Bruce was forward and assertive with her coworkers. (See, e.g. , Mem. at 11 n.9, 12 n.10 (citing Eva Bangert's testimony describing Bruce as "kind of a bitch," "forceful," someone who "speaks her mind," and "boss[ed]" others around as evidence Bruce was "bullying") (quoting Bangert Dep. (Dkt. No. 34-11) at 69-70, 85) ).) See Vickers v. Fairfield Med. Ctr. , 453 F.3d 757, 762 (6th Cir. 2006) ("In the specific context of sex stereotyping, an employer who acts on the basis of a belief that a woman cannot be aggressive, or that she must not be, has acted on the basis of gender.") (citing Price Waterhouse v. Hopkins , 490 U.S. 228, 250, 109 S.Ct. 1775, 1790-91, 104 L.Ed.2d 268 (1989) ). However, Levy's other reason-that Bruce engaged in unauthorized and potentially illegal recording activity-sufficiently meets Levy's burden of offering a nondiscriminatory reason. Furthermore, as set forth below, considering Bruce has established a genuine issue of material fact as to pretext, we need not conclude whether Levy's explanation is discriminatory, and continue our analysis.
II. PRETEXT
The only remaining issue is whether Levy's proffered non-discriminatory reasons were pretextual. "At the summary judgment stage, the issue is whether the plaintiff has produced evidence from which a jury could reasonably doubt the employer's explanation. If so, her prima facie case is sufficient to support an inference of discrimination at trial." Montell v. Diversified Clinical Servs., Inc. , 757 F.3d 497, 508 (6th Cir. 2014) (citing Chen v. Dow Chem. Co. , 580 F.3d 394, 400 n.4 (6th Cir. 2009) ).
A plaintiff can establish pretext in three related ways: "(1) that the proffered reasons had no basis in fact , (2) that the proffered reasons did not actually motivate [her discharge], or (3) that they were insufficient to motivate discharge." Blizzard v. Marion Tech. Coll. , 698 F.3d 275, 285 (6th Cir. 2012) (citing Chattman v. Toho Tenax Am., Inc. , 686 F.3d 339, 349 (6th Cir. 2012) ). However, this "three-part test need not be applied rigidly," as " '[p]retext is a commonsense inquiry: did the employer fire the employee for the stated reason or not?' " Blizzard , 698 F.3d at 285 (citing Chen , 580 F.3d at 400 n.4 ).) At summary judgment, "the plaintiff retains the ultimate burden of producing 'sufficient evidence from which the jury could reasonably reject [the defendant's] explanation and infer that the defendant[ ] intentionally discriminated against h[er].' " Johnson v. Kroger Co. , 319 F.3d 858, 866 (6th Cir. 2003) (citing Braithwaite v. Timken Co. , 258 F.3d 488, 493 (6th Cir. 2001) ). Finally, the Sixth Circuit has urged caution in granting summary judgment for an employer once a plaintiff establishes a prima facie case because "an employer's true motivations are particularly difficult to ascertain" and are "elusive." Singfield v. Akron Metro. Hous. Auth. , 389 F.3d 555, 564 (6th Cir. 2004) (citing Tex. Dept. of Cmty. Affairs v. Burdine , 450 U.S. 248, 255 n.8, 101 S.Ct. 1089, 1094 n.8, 67 L.Ed.2d 207 (1981) ).
We find Bruce has established sufficient evidence that could lead a reasonable jury to conclude that both suggested reasons for her firing-bullying behavior and recording-did not actually motivate her termination and instead were mere pretext. First, there is close temporal proximity between Bruce's complaints *970 about harassment between November 2014 and February 2015 and her termination in May 2015. (Resp. at 7; SOF ¶ 42; PSAF ¶ 24, 53-54; Resp. to PSAF ¶¶ 12.) See Seeger v. Cincinnati Bell Tel. Co., LLC , 681 F.3d 274, 285 (6th Cir. 2012) ("[S]uspicious timing is a strong indicator of pretext when accompanied by some other, independent evidence.") (citing Bell v. Prefix, Inc. , 321 Fed. App'x 423, 431 (6th Cir. 2009) ); see also Ford Motor Co. , 782 F.3d at 767 (finding four months between protected activity and plaintiff's discharge to be "suspicious"). This period of about four months is especially suspect considering Levy had employed Bruce for more than ten years before she was terminated. (SOF ¶ 15.)
Second, Bruce became the subject of increased scrutiny after she reported Caffey's harassment. While the parties agree Halterman issued Bruce multiple verbal warnings between February and April 2015 for arriving early or late to scheduled shifts, time reports demonstrate Bruce had been similarly arriving early or late for years without reprimand before she complained about Caffey. (Resp. to PSAF ¶¶ 27-29, 31-38 (summarizing instances in 2013 and 2014 when Bruce clocked in early or late without being disciplined, although Halterman testified Bruce "could have had approval from management in advance"); Attendance Disciplinary Reports (Dkt. Nos. 41-10, 41-11, 41-13).) See also EEOC v. New Breed Logistics , 783 F.3d 1057, 1070 (6th Cir. 2015) (finding evidence that supervisor had "no problems" with employee's "tardiness" before "rejection of his sexual advances" to be evidence of pretext). In fact, Halterman issued Bruce her first verbal warning only four days after the day he testified he first learned about Caffey's behavior. (PSAF ¶¶ 24, 27.)
Third, Levy's proffered reason for firing Bruce for hostile and bullying behavior is inconsistent with her recent positive performance evaluations. Henry v. Abbott Labs. , 651 F. App'x 494, 502 (6th Cir. 2016) (finding recent positive reviews of an employee's performance to be evidence of pretext in failure-to-promote claim). For example, in Bruce's performance evaluation for 2014, she received scores of "outstanding" or "very good" in ten out of fourteen categories under review.[12] (PSAF ¶ 23 (citing Jan. 2015 Review).) Halterman even wrote in the review, "Tina is a great asset to our team and has been for many years." (Jan. 2015 Review at 2.) Taking into account the evidence of temporal proximity between Bruce's complaints and her termination, the increased scrutiny she received post-reporting, and her recent positive performance reviews, we find a reasonable jury could find Levy's proffered explanations were not the actual motivation for her discharge. We accordingly find a material issue of fact as to pretext, and deny Levy's motion for summary judgment as to Count II.
Levy raises several arguments in relation to pretext, none of which change our conclusion that Bruce has established a genuine issue of material fact as to pretext. Levy argues extensively that Bruce cannot overcome Levy's suggested reasons for her termination because it had an "honest belief" in the stated reasons for terminating Bruce. (Mem. at 14-16.) Essentially, Levy argues that Bruce cannot create an issue of fact related to pretext under the honest belief rule because Levy "conducted a thorough investigation," which "is entitled to deference." (Id. at 14 (citing Tingle v. Arbors at Hilliard , 692 F.3d 523, 531 (6th Cir. 2012) ("When an employer reasonably and honestly relies *971 on particularized facts in making an employment decision, it is entitled to summary judgment on pretext even if its conclusion is later shown to be mistaken, foolish, trivial, or baseless.") ).)
When an employer can demonstrate it made a "reasonably informed and considered decision before taking an adverse employment action," the honest belief rule can prevent the finding of pretext at summary judgment even if the reason is ultimately proved to be factually mistaken. Smith v. Chrysler Corp. , 155 F.3d 799, 807 (6th Cir. 1998). The harmless belief rule, however, only prevents Bruce from establishing pretext through the "falsity of the reason offered" method; an employee can still establish pretext through the other two prongs, actual and insufficient motivation. Joostberns v. United Parcel Servs., Inc. , 166 F. App'x 783, 794, n.5 (6th Cir. 2006) ; but see Rhoades v. Standard Parking Corp. , 559 F. App'x 500, 507 (6th Cir. 2014) (noting without overruling Joostberns in dicta that the case was "nonbinding authority," ultimately concluding on other grounds).
In this case, the honest belief rule is not a defense for Levy because Bruce argued Levy's stated reasons for her termination were pretextual as they "could not actually have motivated" or "were insufficient to motivate her termination." (Resp. at 17.) See Seeger , 681 F.3d at 285-86 ("As long as the employer held an honest belief in its proffered reason, 'the employee cannot establish pretext even if the employer's reason is ultimately found to be mistaken, foolish, trivial, or baseless.' ") (citing Smith , 155 F.3d at 806 ); Vaden v. Dekalb Tel. Co-op., Inc. , 21 F.Supp.3d 901, 914 (M.D. Tenn. 2014) ; see also Hawthorne v. Univ. of Tenn. Health Sci. Ctr. , 203 F.Supp.3d 886, 892 n.4 (E.D. Tenn. 2016) ("[T]he honest belief rule only applies when a plaintiff is proceeding solely on the basis that the proffered reason has no basis in fact. If, as here, a plaintiff argues that the proffered reasons did not actually motivate the termination or was insufficient to motivate the termination, the honest belief rule has no application."). We thus find the honest belief rule does not preclude our finding of an issue of fact relating to pretext in this case.
We also disagree with Levy's argument that we cannot consider Halterman's actions because he was not a decisionmaker in Bruce's termination. (Mem. at 15; Reply (Dkt. No. 46) at 2, n.4.) While generally "[a]ctions by nondecisionmakers cannot alone prove pretext," nondecisionmaker statements can provide "relevant circumstantial evidence of pretext" in retaliation claims. Ford Motor Co. , 782 F.3d at 768, 785. Furthermore, there is a general issue of material fact as to whether Halterman was involved in the decisionmaking process that resulted in Bruce's termination. Levy suggests Meyer and Parfitt alone "made the decision to terminate Ms. Bruce's employment," which Bruce denies. (Resp. to SOF ¶¶ 98, 100.) While Halterman's name is not on the Bruce's notice of termination letter (Dkt. No. 41-15), Halterman signed Levy's notice of Bruce's suspension on April 25, 2015 after the recorder was allegedly found in Bruce's purse (Dkt. No. 41-15). (Resp. to SOF ¶ 100.) This suspension began the investigation period that ultimately resulted in Bruce's termination only ten days later. (SOF ¶¶ 94, 101.) In his deposition, Halterman also testified he is "sure" he talked with Parfitt about the circumstances surrounding Bruce's suspension and does not recall if he took part in the investigation after the suspension. (Halterman Dep. (Dkt. No. 41-25) at 53-54, 57.) As Halterman was Bruce's manager at the time of her termination and had been involved in review of Bruce's performance in the months before her termination, it is *972 probable that Halterman had some role in the decision to terminate Bruce. (PSAF ¶¶ 20-23, 27-29 (establishing Halterman's involvement in Bruce's internal performance reviews and his issuance of multiple disciplinary reports in February, March, and April 2015).) See Ford Motor Co. , 782 F.3d at 785-86 (finding the comments of an employee's supervisor who had been involved in prior meetings about his performance to be probative evidence of pretext). Based on the record, a reasonable jury could agree with Bruce that Halterman was a decisionmaker in her termination.
* * *
Based on Bruce's establishment of a material issue of fact as to pretext, we accordingly deny Levy's motion for summary judgment on Bruce's retaliation claim (Count II).
CONCLUSION
For the foregoing reasons, we hereby grant Levy's motion for summary judgment on Count I and deny summary judgment as to Count II. (Dkt. No. 34.) The trial date remains set for April 16, 2019. In preparation for trial, the parties shall file a joint proposed pretrial order on or before January 21, 2019, which must include: (1) a joint statement of the nature of the case, not to exceed one or two short paragraphs, to be read to prospective jurors by the Court at voir dire; (2) a brief statement of the basis for jurisdiction and whether jurisdiction is disputed; (3) joint stipulations as to the admissibility of exhibits, stipulated law, and uncontested facts; (4) a brief stipulation or statement of the qualifications of any expected expert witness, in such a form that could be read to the jury; (5) a list of deposition designations, including the line and page number to be read or played during trial; (6) an itemized statement of damages; (7) the parties' recommendation as to the number of jurors to be selected at the commencement of trial, including alternates; (8) a statement as to whether the parties consent to a less than unanimous verdict; and (9) a statement as to whether the parties have recently attempted to settle this matter, including a report on the results of any prior mediation.
Motions in limine are due on or before January 21, 2019, with responses due on or before February 4, 2019, and replies due February 11, 2019. Motions in limine that are not timely submitted will not be considered.
In addition, on or before January 21, 2019, the parties shall file a joint proposed set of jury instructions, voir dire questions, and verdict forms. To the extent the parties are unable to agree in full, they shall also file separate proposed instructions, voir dire questions, or verdict forms, with citations to supporting authorities. On or before January 21, 2019, the parties shall also file witness lists and exhibit lists, including a schedule of any demonstrative evidence or experiments to be offered during trial.
Finally, the following pretrial materials are due on or before February 4, 2019: (1) objections to proposed jury instructions; (2) objections to proposed voir dire questions; (3) objections to proposed verdict forms; (4) objections to deposition designations and counter-designations; and (5) any evidentiary objections to the other party's proposed witnesses and exhibits describing specific legal reasoning. Trial memoranda may be filed on or before February 4, 2019.
Should the parties not file the listed pretrial materials by the deadlines provided in this Order, the Court will consider such submissions waived. On the date of the above filings, the parties shall also fax a copy thereof to chambers (312-554-8515). If the filings would generate a fax exceeding *973 40 pages in length, however, the parties shall simply fax a notice to chambers indicating that the filings were submitted via CM/ECF as instructed.
It is so ordered.

Levy does not contest the occurrence of a number of specific incidents when Caffey behaved in a sexually inappropriate manner towards Costley. (See Resp. to PSAF (Dkt. No. 47) ¶¶ 3-5.)

Bruce claims she first reported Caffey's harassment of Costley to Halterman "while walking around the arena in November ... 2014." (Resp. to SOF ¶ 42.) In a February 21, 2015 online report through a Levy online portal, Bruce detailed Caffey's sexual harassment and claims she told Halterman about the harassment "about 6-8 weeks ago," but that nothing had been done by Halterman. (Resp. to PSAF ¶¶ 53-54; Dkt. No. 34-8.) Levy, however, claims that Halterman did not know of Caffey's sexual harassment of Costley prior until February 20, 2015. (Resp. to PSAF ¶¶ 12, 24 (denying Halterman knew of the harassment six weeks before February 22, 2015).)

Bruce denies she made racist comments "either at the concert or any other time," but admits the complaints and written warnings occurred, though she believes the disciplinary action she received based on these reports was in retaliation for her complaints about Caffey. (Resp. to SOF ¶¶ 73, 80.)

The March 1, 2015 complaints were submitted by Levy employees Emily Roebuck, Emily Beckwith, and Alex Remar. (Id. ¶ 74.) The parties do not dispute that Roebuck and Remar were friends with Caffey and were "angry" about Caffey being fired, but Levy argues there is no evidence Parfitt or Meyer were aware of the complainants' friendship with Caffey. (Resp. to PSAF ¶¶ 14-15, 18.)

Again, Bruce denies she spoke in a "rude or unprofessional manner" or accused Remar of smoking marijuana "as indicated in her statement," although she admits the three statements were submitted to Levy management. (Resp. to SOF ¶¶ 74-77.) Bruce also claims she did not learn of Roebuck's allegation of being "rude and unprofessional" or Remar's complaint Bruce had accused her of smoking marijuana until after she was terminated by Levy. (Id. ¶ 82.)

The parties agree that Levy timesheets reveal numerous times that Bruce clocked in early or late to her shifts in 2013 and 2014, and that Bruce did not receive any discipline or write up for these infractions. (Resp. to PSAF ¶¶ 34-39.) Levy argues Bruce may not have been disciplined because Bruce "could have had approval from management in advance," although Halterman testified he could not recall any specific instances in 2013 or 2014 where he approved Bruce arriving early or late. (Id. ¶¶ 34-39.)

Levy claims Halterman did not make the decision to terminate Bruce. (SOF ¶ 100; Mem. at 15.) Bruce admits that Halterman did not sign the notice of termination, but argues Halterman had a "role" in her termination and was part of the investigation before her termination: Halterman issued three verbal warnings "leading up to her termination" for arriving early or late to her shift, and Halterman signed her notice of suspension dated April 25, 2015 after Bruce's recording device was discovered. (Resp. to SOF ¶ 100; see also Resp. To PSAF ¶ 61 (disputing whether Halterman was a part of the investigation between Bruce's April 25, 2015 suspension and May 5, 2015 termination).)

Bruce also named Compass Group USA, Inc. ("Compass") as a Defendant in her complaint. However, the parties filed a joint motion to dismiss Compass after exchanging documents revealing Levy was Bruce's employer during the relevant period. (Dkt. No. 30.) Compass was accordingly dismissed without prejudice, and Levy is the only remaining Defendant in this case. (Dkt. No. 31.)

Levy requests that "in the event the Court dismisses Ms. Bruce's claims against Levy with prejudice, Ms. Bruce should not be permitted to revive any claims against Compass, as Compass was an improper party to this lawsuit in the first place." (Mem. at 2 n.1.) In October 2017, before Levy filed the pending motion for summary judgment, the parties filed a joint motion to dismiss Compass without prejudice, which we granted. (Dkt. Nos. 30-31.) With the entry of summary judgment on Count I for Levy, Levy now requests we turn Compass' dismissal into a dismissal with prejudice. Levy cites no caselaw in support of its request. (Mem. at 2 n.1.) Should Compass wish to obtain a dismissal with prejudice, it could have negotiated that term with Bruce before filing the joint motion to dismiss, or remained in the case until the summary judgment stage. However, we have neither considered the merits of Bruce's claims against Compass nor evaluated whether Compass employed Bruce, and deny Levy's request. Compass shall remain dismissed from this case without prejudice.

For the purposes of our analysis, we only consider Bruce's termination as the relevant adverse employment action. Bruce argues that other actions taken by Halterman and Parfitt were made in retaliation for Bruce's complaints about Caffey, including the reassignment of Bruce's higher-tipping suites to other suite attendants and reprimands for clocking in early or late to shifts. (Resp. at 2.) While these actions may be relevant to establishing pretext, Bruce admits the only adverse employment action at issue in her retaliation claim is her ultimate termination. (Id. at 2, 6; Mem. at 8 n.6 (stating that "only Ms. Bruce's discharge constitutes an adverse employment action for purposes of establishing a retaliation claim," a fact that Bruce does not dispute in her response and thus admits).)

Under Tennessee law, it is generally unlawful to record a conversation unless one party present consents to the recording. See Tenn. Code Ann. § 39-13-601(b)(5).

Of the remaining four categories, Bruce received the rating of "good," which indicated her "[p]erformance meets all requirements of position." (Resp. to PSAF ¶ 23.)