**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 14a0593n.06

No. 13-6433

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Aug 04, 2014
DEBORAH S. HUNT, Clerk

PAT CHANDLER,

      Plaintiff-Appellant,

v.

REGIONS BANK,

      Defendant-Appellee.

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE

BEFORE:     KEITH, CLAY, and McKEAGUE, Circuit Judges.

CLAY, Circuit Judge.   Plaintiff Pat Chandler appeals the district court's grant of summary judgment in favor of Plaintiff's former employer, Defendant Regions Bank, on Plaintiff's gender discrimination and retaliation claims. Plaintiff alleges that Defendant violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e ("Title VII"), and the Tennessee Human Rights Act, Tenn. Code. Ann. § 4-21-101, *et. seq.* ("THRA") by implementing employment practices that favor female employees, and by retaliating against Plaintiff for complaining about this alleged discrimination. For the reasons that follow, we **AFFIRM** the district court's grant of summary judgment in favor of Defendant.

**BACKGROUND**

Plaintiff worked as a Mortgage Loan Originator ("MLO") at Defendant Regions Bank from November 2008 until his resignation in June 2011. In this position, Plaintiff's duties

included generating mortgage leads, assisting customers with selecting among the various loan programs, and gathering required documentation to complete the mortgage loan application. Plaintiff was also responsible for submitting the completed mortgage application to a loan processor and underwriter, who finalized and closed the loan.

Defendant maintains line of business ("LOB") relationships between MLOs and its bank branches. At the time he was hired, Plaintiff was assigned three branches in the Rutherford County Mortgage Production Office. After one of Plaintiff's branches closed, Plaintiff was left with two branches. Plaintiff contends that branch allocations were made at the ultimate discretion of Gayle Kindig. The number of branches assigned to each MLO varies, and appears to range from as few as one to as many as nine.

In December 2010, Plaintiff sent an e-mail to his supervisor, Joseph Campopiano, in which he requested a change in his branch assignments. Plaintiff wrote that, in order to meet his minimum production standards, he would either need to be assigned additional branches to increase his volume, or be transferred to a more affluent area with a higher average loan amount. Plaintiff specifically requested that he be assigned to a large branch in Goodlettsville, Tennessee, where there was a vacancy. Defendant assigned Plaintiff to a "small rural branch" in Franklin, Kentucky. Plaintiff considered the Franklin branch to be a "booby door prize." The Goodlettsville branch was allocated to Lee Mingo, a male MLO.

Plaintiff felt that the allocation of branches at Regions was inequitable and discriminatory. He complained that male MLOs received fewer, and less desirable, branch assignments than certain female MLOs. Plaintiff contends female employees sometimes had two or three times more branches assigned to them as male employees. Sandy Glass, a female MLO, had nine branches assigned to her, while Plaintiff at one time had only two. Plaintiff also

contends that female MLOs Debbie Large and Becky Lynch had a greater number of branches than Plaintiff. Neither party has submitted any data regarding the actual number of branches assigned to any MLO, other than the deposition testimony of Ellie Teed, who testified that she had three branches as of the date of her deposition, but had, at other times during her employment, been assigned as few as one branch.

Plaintiff also took issue with Defendant's system for "internal referrals"—branch employees' referral of walk-in customers. Defendant employs an "open architecture" referral system, meaning that branch employees are permitted to refer potential mortgage customers to any MLO in the company, and not obligated to send referrals to the MLO assigned their particular branch. Branch employees receive a small incentive for making internal mortgage referrals, but the amount of the incentive is the same regardless of to which MLO they refer the potential customer.

Joyce Mungle, the branch manager at one of Plaintiff's assigned branches, typically referred potential loan customers to Ellie Teed, a female MLO, rather than to Plaintiff. Mungle testified that she referred potential loan customers to Teed instead of Plaintiff because she had received complaints about Plaintiff's customer service. Plaintiff disputes the contention that he provided poor customer service, and contends that he had a stellar customer service ranking. Campopiano testified that Plaintiff received positive reviews on customer feedback surveys, and received a score of 100% for customer service in the year 2010. However, Campopiano also testified that he had, at one time, discussed with Plaintiff his concern that branch managers thought "customers were getting gouged" by Plaintiff's aggressive approach to overage charges. Plaintiff allegedly replied that it was not the branch managers' responsibility to worry about how much money he made or what he charged the customers.

Plaintiff alleges that the internal referral system at Regions was inherently flawed because it allowed female branch employees to favor female MLOs at the expense of male MLOs. Plaintiff contends that Defendant "fostered an environment of discrimination by allowing branch managers and employees to refer customers to any MLO, or their favorite MLO, all the while maintaining that a certain MLO was responsible for each branch." (R. 42, Response at 580.) Plaintiff submits that the "open architecture" referral system "was ripe for discrimination and it was evident that at least one female employee was referring customers exclusively to a female MLO, and was permitted to do so." (*Id.*)

Around December 2010, Plaintiff filed a formal complaint with Joseph Campopiano, Chuck Mander, and Gayle Kindig about the discriminatory assignment of branches as well as the encouraging of employees at his branch to send leads to female MLOs. Plaintiff then filed another complaint with Human Resources about the discriminatory practices, and alleges that no corrective action was taken. On March 3, 2011, the Area Human Resources Manager, Marlene Akin, met with Plaintiff to discuss his complaints. Akin told Plaintiff that she would look into his complaints and follow up with him.

On March 22, 2011, Plaintiff filed an EEOC Charge. He filed a second EEOC Charge on April 13, 2011. Near the end of April 2011, Campopiano was terminated, and Gayle Kindig replaced Campopiano as Plaintiff's direct supervisor. In one of her initial meetings with Plaintiff, Kindig informed Plaintiff that she was aware that he had filed a charge with the EEOC.

Plaintiff contends that the loan approval process became "more hostile" prior to his resignation in June 2011, and submits that his loans were being "slow walked" through the process, meaning that his loans took an exceptionally long time to close after he submitted loan applications to the loan processor. Plaintiff ultimately resigned on June 16, 2011; he contends

that his resignation was constructive discharge. Plaintiff also alleges that Defendant sabotaged his job application at a future place of employment by indicating that Plaintiff was "ineligible for rehire" and giving him a poor review.

Plaintiff filed a complaint against Defendant in the Middle District of Tennessee on July 24, 2012, alleging violations of Title VII, THRA, and the Civil Rights Act of 1991.[1] On August 2, 2013, Defendant filed a motion for summary judgment. Plaintiff filed a response opposing Defendant's motion for summary judgment on September 4, 2013, and Defendant filed its reply twenty days later. On October 1, 2013, the district court granted Defendant's motion for summary judgment. Plaintiff timely appealed. On appeal, Plaintiff challenges only the dismissal of his retaliation and disparate impact discrimination claims.

## DISCUSSION

We review *de novo* a district court's grant of summary judgment. *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014). In evaluating Defendant's motion for summary judgment, we accept Plaintiff's evidence as true, and draw all reasonable inferences in Plaintiff's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Summary judgment is appropriate when the evidence is so lacking or one-sided that a reasonable jury could arrive at only one conclusion. *Id.* at 251–52. "The ultimate question is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Laster*, 746 F.3d at 726 (internal quotation marks and citations omitted.) However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position is insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

---

[1] Plaintiff initially pled a hostile work environment claim, but that claim was later dropped.

## 1. TITLE VII DISPARATE IMPACT DISCRIMINATION CLAIM

To establish a *prima facie* case of discrimination under the disparate impact theory, "a plaintiff must: (1) identify a specific employment practice; and (2) present data indicating that the specific practice had an adverse impact on a protected group." *Davis,* 717 F.3d at 494; *see also Dunlap v. Tennessee Valley Authority*, 519 F.3d 626, 629 (6th Cir. 2008) (describing the second element as: "the plaintiff . . . through relevant statistical analysis proves that the challenged practice has an adverse impact on a protected group."). Plaintiff satisfied the first element by identifying two specific employment practices: 1) the allegedly arbitrary assignment of branches, and 2) the allegedly flawed "open architecture" internal referral system. However, Plaintiff's claim falls short on the second element because Plaintiff has presented virtually no statistical data or other evidence indicating that these specific practices had an adverse impact on male MLOs.

The evidence in this case consists of: 1) the affidavit of Human Resources professional Rena Ramsey, and attached exhibit (a compilation of internal referral data); and 2) deposition testimony from Plaintiff, Chuck Mader, Joseph Campopiano, Gayle Kindig, Ellie Teed, and Joyce Mungle. The only statistical evidence presented with regard to the internal referral policy is Exhibit A—a spreadsheet tallying the total number of internal referrals received by each MLO. As the district court correctly observed, "the numbers of referrals do not reflect a noticeable discrepancy between male and female MLOs." *Chandler v. Regions Bank*, No. 3-12-0767, 2013 WL 5503139 at *3 (M.D. Tenn. Oct. 1, 2013). To the contrary, as Rena Ramsey stated in her sworn affidavit, Defendant's "records for the period in question do not indicate that female MLOs, as a group, are being treated differently from male MLOs, as a group, with respect to internal referrals within the Rutherford County group." (R. 33-9, Ex. 9, at 407.) Apart from

Exhibit A and his own deposition testimony, Plaintiff did not submit any other evidence—statistical or otherwise—to support his claim that male MLOs are disproportionately disadvantaged by the internal referral policies. Similarly, Plaintiff has not submitted any statistical evidence or other data about branch allocations apart from the testimony of Ellie Teed and himself. The deposition testimony does not support the finding that the discretionary system of branch allocations had a disparate impact on males. In fact, Ellie Teed testified that she was allotted fewer branches than Plaintiff. Plaintiff's unsupported contention that certain female MLOs were assigned to a greater number of branches is insufficient to satisfy Plaintiff's burden of production. Without more evidence to support Plaintiff's allegation that the system of branch allocations had a disparate impact on male MLOs, a jury could not find that the system was discriminatory.

Plaintiff argues that the law does not require that he present statistics in order to make a *prima facie* showing on his disparate impact claim. In *Lynch*, we held that a plaintiff was "not required to prove her case by statistics." 817 F.2d at 387. We observed: "Both §§ 703(a)(1) and (a)(2) speak in terms of 'any individual.' The focus of § 703(a)(1) is discriminatory treatment of any individual, and of § 703(a)(2) discriminatory consequences," *id.* at 388, and stated: "While Title VII plaintiffs may be able to prove some disparate impact cases by statistics, that is not the only avenue available," *id.* at 387–88. In *Lynch*, the plaintiff presented credible expert testimony explaining the disparate impact on female employees, which served as an alternative "avenue" to support the plaintiff's claim. In this case, unlike *Lynch*, not only did Plaintiff present no statistical evidence to support his claim, but he presented no evidence of any kind to support a jury finding that the specified policies had a disparate impact on male employees. Moreover, Plaintiff has not alleged that Defendant withheld this information, and has provided no other

reason for this Court to overlook the paucity of evidence in this case. Accordingly, the district court properly dismissed this claim.

It is true that "[t]he evidentiary requirements of a *prima facie* case of discrimination are not onerous." *Lynch v. Freeman*, 817 F.2d 380, 388 (6th Cir. 1987), but Plaintiff has produced virtually no evidence upon which a jury could conclude that Defendant's policies had a disparate impact on male MLOs. Defendant, on the other hand, has produced evidence suggesting that the challenged policies did not impose a disproportionate burden on male MLOs. Plaintiff could have attempted to compile additional data to support his disparate impact claims during the discovery period, but that period has expired. In light of the paucity of evidence to support Plaintiff's disparate impact claim, the district court did not err in granting Defendant's motion for summary judgment.

## 2. TITLE VII RETALIATION CLAIM

Because Plaintiff has not presented direct evidence of retaliation, we analyze his claim under the burden-shifting framework of *McDonnell Douglas*, 411 U.S. 792. *See Laster*, 746 F.3d at 730. Plaintiff bears the initial burden to establish a *prima facie* case of retaliation. If he succeeds in making out the elements of a *prima facie* case, "the burden of production of evidence shifts to [Defendant] to articulate some legitimate, non-discriminatory reason for its actions." *Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir. 2007) (internal quotation marks omitted) If Defendant satisfies its burden of production, the burden shifts back to Plaintiff to demonstrate that Defendant's proffered reason was not the true reason for the action. *Id.* Although the burden of production shifts between the parties, Plaintiff bears the burden of persuasion throughout the process. *Id.*

To establish a *prima facie* case of retaliation under both Title VII and THRA, Plaintiff must demonstrate that: (1) he engaged in activity protected by Title VII; (2) his exercise of such protected activity was known by Defendant; (3) thereafter, Defendant took an action that was "materially adverse" to the plaintiff; and (4) a causal connection existed between the protected activity and the materially adverse action. *Laster*, 746 F.3d at 730; *see also Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67–68 (2006) (modifying the third element to require a "materially adverse action" rather than an "adverse employment action"). The first two elements of Plaintiff's *prima facie* case are not disputed.

The district court erred in analyzing the third element of Plaintiff's retaliation claim. In assessing this element, the district court referred back to its analysis of Plaintiff's discrimination claim, stating:

> This Court has already found . . . that Plaintiff has not demonstrated that he suffered an adverse employment action. Neither the alleged "slow walking" nor the accusations of forgery (which were eventually dropped) constitutes an adverse employment action for these purposes.

*Chandler*, 2013 WL 5503139 at *4. As we recently stated in *Laster*, "[t]he 'materially adverse action' element of a Title VII retaliation claim is substantially different from the 'adverse employment action' element of a Title VII . . . discrimination claim." 746 F.3d at 719 (citing *Burlington N.*, 548 U.S. at 59). To establish the third element of a retaliation claim, Plaintiff need only show that "the challenged action . . . well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N.*, 548 U.S. at 68 (internal quotation marks and citations omitted). The burden of showing that Plaintiff was subjected to adverse action is "less onerous" in the context of a retaliation claim than in the context of a discrimination claim; actions which are not "adverse" for purposes of a discrimination claim may nevertheless qualify as such for purposes of a retaliation claim. *Laster*, 746 F.3d at 732.

Accordingly, the district court erred in finding that the alleged "slow walking," and other actions could not constitute "material adverse action" for the purposes of Plaintiff's retaliation claim.

Nevertheless, Plaintiff's claim must fail—not because the alleged actions cannot form the basis of a retaliation claim as a matter of law, but because Plaintiff has failed to produce any evidence that many of these actions even occurred, as a matter of fact, or that they occurred as a result of Plaintiff's protected activity.

First, Plaintiff has not produced any evidence to support his allegation that his loans were being "slow walked." Apart from his own assertion, Plaintiff has not submitted a modicum of evidence showing that his loans took longer than average to process. To the contrary, the record shows that delays in loan processing had been an ongoing problem for all MLOs, and not only Plaintiff. Moreover, Plaintiff admits that several of his loans were delayed due to the fact that Plaintiff submitted applications that were incomplete. Plaintiff also failed to produce any evidence that the pace of his loans was influenced by individuals who were aware of Plaintiff's protected activities. There is no evidence from which a jury could conclude that the underwriters who were allegedly "slow-walking" Plaintiff's loans had any retaliatory motive or knowledge of Plaintiff's protected activity or that Plaintiff's supervisors encouraged any delays. Accordingly, there is insufficient evidence to support the notion that Plaintiff's loans were "slow walked" in retaliation for engaging in protected activity.

Plaintiff's remaining subclaims—his allegations that Defendant failed to investigate his complaints of discrimination, denied him assignment to a branch that he desired, and sabotaged his application for future employment—fail because Plaintiff cannot show that there was any causal connection between his protected activity and the alleged adverse actions. Retaliation claims "must be proved according to traditional principles of but-for causation." *Univ. of Texas*

*Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013). Because Plaintiff has not proffered evidence sufficient to raise an inference that his protected activity was the likely reason for the adverse action, *EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 861 (6th Cir. 1997) (quoting *Zanders v. National R.R. Passenger Corp.,* 898 F.2d 1127, 1135 (6th Cir. 1990)), Plaintiff's retaliation claim must fail.

## CONCLUSION

For the reasons set forth above, we **AFFIRM** the district court's grant of summary judgment in favor of Defendant.