NOT RECOMMENDED FOR PUBLICATION
File Name: 20a0435n.06

**No. 19-2101**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jul 27, 2020
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| PRINCE ROBINSON, | ) |
| | ) |
| | ) |
| Plaintiff-Appellant, | ) |
| | ) |
| | ) ON APPEAL FROM THE |
| v. | ) UNITED STATES DISTRICT |
| | ) COURT FOR THE EASTERN |
| MGM GRAND DETROIT, LLC, | ) DISTRICT OF MICHIGAN |
| | ) |
| Defendant-Appellee. | ) |
| | ) |
| | ) |

BEFORE: GIBBONS, LARSEN, and NALBANDIAN, Circuit Judges.

JULIA SMITH GIBBONS, Circuit Judge. Prince Robinson, a former a valet attendant employed by MGM Grand Detroit, LLC ("MGM"), appeals the district court's denial of his motion to reconsider its order granting summary judgment in favor of MGM on his Family Medical Leave Act ("FMLA") retaliation, Americans with Disabilities Act ("ADA") and Michigan's Persons With Disabilities Civil Rights Act ("PWDCRA") retaliation, and Title VII and Michigan's Elliot-Larsen Civil Rights Act ("ELCRA") retaliation claims. Robinson claims that his employment was terminated because he took FMLA leave and submitted a grievance letter to MGM's Human Resources ("HR") department. MGM contends that Robinson was terminated after its internal investigation found that Robinson created a false time record after failing to clock in for his shift, contrary to MGM's policies and a terminable offense. We affirm.

I.

Robinson began his employment with MGM in 2002 as a valet attendant. Robinson would often have to run on concrete as part of his job, and he eventually developed plantar fasciitis in both feet. Robinson sought treatment and had custom orthotics made to alleviate the pain caused by the plantar fasciitis. Robinson applied to take intermittent leave under the FMLA in March 2016, but MGM denied the leave request because Robinson's physician failed to adequately complete a medical certification form.

Robinson reapplied for intermittent FMLA leave, based on his foot pain, in September 2016. While his application was pending, he used a combination of sick and vacation leave to miss thirteen days of work over the next thirty days. MGM approved the request on September 29, 2016, and it made the approval retroactive to September 14, 2016. The approval granted Robinson 480 hours of unpaid leave that he could use as needed to manage the pain in his feet.

On September 30, 2016, Robinson was scheduled to work from 6 p.m. to 2 a.m., starting at MGM's casino side valet at 6 p.m. and the hotel side valet starting at 7 p.m. The timeclock for employees to clock in was located on the casino side. Robinson entered MGM's employee entrance at 6:02 p.m. From 6:04–6:06 Robinson put on his uniform, and he entered the hotel side valet area at 6:07 p.m. Robinson then drove a car over to the casino side valet, where he reported for work at 6:10 p.m. Robinson testified that he decided not to clock in because he believed that he was slated for a high-tip assignment at the beginning of his shift and walking to the timeclock would have caused him to miss out on his "money hour." At the end of his shift, Robinson attempted to clock out, but since he did not clock in, the machine reported that there was no clock in found. Therefore, Robinson used the exception log to record his time. In the "In Time" column he wrote "6pm" and in the "Out Time" column he wrote "2am." In the "Reason" column he wrote

2

"Reg/NCIF," meaning that it was a regular shift and there was "No Clock In Found." Robinson wrote 6 p.m. to 2 a.m. because that was his shift, but he acknowledged that these times were not accurate.

MGM required employees to clock in and out of every shift and assigned disciplinary points according to the type of violation (*e.g.*, tardy, no show, or call-in). The number of accumulated points leads to various disciplinary actions. MGM also required valet attendants to report "[two] minutes prior to the start of the assigned shift," "in full uniform," and "ready to perform." DE 43-4, Valet Services Reporting Time, PageID 913. Further, MGM's policy required a supervisor to sign off on the exception log if they were able to verify the employee's arrival and departure. Alternatively, if a supervisor was unable to confirm the time worked, then the log entry was confirmed using surveillance video. Because no supervisor signed Robinson's entry on September 30, 2016, surveillance video was used to confirm Robinson's entry and departure.

MGM's employee policy explicitly provided that "[a]ny employee who fails to report or inaccurately reports any hours worked will be subject to disciplinary action, up to and including discharge. It is a violation of the Company's policy for any employee to falsify a time record or to alter another employee's time record." DE 43-3, Employee Handbook, PageID 903. Similarly, MGM's Rules of Conduct provided that immediate termination is warranted if an employee "[m]ak[es] false statements on, submit[s] fraudulent or altered documents in connection with, or omit[s] material information from, any personnel or other MGM Grand Detroit application, form, document, or other record, including . . . the Time and Attendance Record." DE 43-4, Rules of Conduct, PageID 907.

After discovering that Robinson's exception log time entry did not match the surveillance video, MGM scheduled Robinson to be suspended pending investigation on October 3. However,

Robinson took a combination of vacation and MGM-approved FMLA leave from October 3–25. Robinson's podiatrist certified that Robinson was totally incapacitated due to his plantar fasciitis from October 10–25, 2016. Robinson returned to work on October 29 and, at the end of his shift, was suspended pending investigation.

While on vacation and FMLA leave, Robinson heard rumors that he was going to be terminated. After hearing the rumors and wanting to "nip [his suspension] in the bud," Robinson drafted a letter on October 10, asserting various grievances, and had it notarized on October 27. DE 46-3, Robinson Dep., PageID 1265. When Robinson returned to work on October 29, he dropped the letter off in a box outside the HR office.

The letter detailed multiple allegations of "ridicule[]" and "disrespect" from his manager Lisa Conner. DE 43-18, Internal Compl., PageID 1038. The letter presented various instances of Conner acting inappropriately toward employees based on rumors Robinson heard. Additionally, Robinson alleged that Conner discriminated against him because of his skin color, stating that he "was too light skin[ed]" and that he should "get some sun." *Id.* at 1039. He also detailed an incident where Conner introduced Robinson to another man and referred to the other man as "a real man." *Id.* He included additional allegations of Conner's harassment, such as Conner calling him "pathetic" and saying she felt "sorry for his wife." *Id.* at 1041. Robinson also alleged that he thought Conner sought to have him surveilled and "has the tapes reviewed solely on [Robinson] when there is a clock in issue." *Id.* at 1040. Regarding his FMLA leave, Robinson alleged that "[Conner]'s agenda is to get anyone fired who has [FMLA] approval" and that Conner must have told one of the valet supervisors, Enrique Martinez, about his FMLA leave because Martinez once, "out of the blue," said to Robinson, "Congratulations I hear you got IMFLA [sic] now!" *Id.*

Wanda Parker, an MGM labor relations partner, met with Robinson and his union representatives on November 8, 2016, for a due process meeting. Robinson recorded the meeting, and a transcript was created. Robinson acknowledged that he was late to arrive to his shift on September 30, and that if he had gone to clock in at the valet timeclock on the casino side it "probably would have been 6:10 maybe," before he clocked in "because [he] had to still commute all the way back to the hotel side." DE 43-20, Suspension Meeting Tr., PageID 1065–66. Robinson acknowledged that, once he was eventually over on the casino side, "it's not that [he] couldn't have swiped in right there, . . . but the problem would have been the lack of [his] getting credit for the amount of work that [he] already [completed] since [he] got there." *Id.* at 1074. With regard to the exception log, Robinson explained that he wrote "6" p.m. to 2 a.m. instead of "6:02" not to hide his tardiness but rather to record that he was there for his shift. Regarding his letter, Robinson recognized that he had not previously said anything to HR about the allegations against Conner.

After the meeting and additional investigation, Parker recommended that Robinson be terminated. MGM's HR Director, Tara McIntosh, and the Vice President of the Valet Department, Marc Gaustella, made the final decision to fire Robinson. MGM terminated Robinson's employment on November 15, 2016.

Robinson filed suit alleging, among other claims, retaliation in violation of the FMLA, ELCRA, Title VII, ADA, PWDCRA; and discrimination in violation of the ADA, ELCRA, PWDCRA and Title VII. MGM filed a motion for summary judgment. The district court granted MGM's motion, holding, in relevant part, that Robinson made a prima facie case of FMLA retaliation but failed to show that MGM's stated reason for his termination was pretextual. The district court also concluded that Robinson failed to establish a prima facie case of ADA,

PWDCRA, Title VII or ELCRA retaliation because his internal grievance letter was not protected activity and Robinson failed to provide evidence of a causal connection between submitting the letter and his termination. The court similarly granted summary judgment to MGM on Robinson's other claims.

Robinson filed a motion under Federal Rule of Civil Procedure 59(e) to alter or amend the judgment, arguing that the court erred in overlooking factual support for his claims, not making all inferences in his favor, and holding Robinson to too high a standard on his retaliation claims. The district court held that Robinson's motion for reconsideration was untimely under the Eastern District of Michigan's local rule 7.1 requiring filing of a motion for reconsideration within 14 days after the entry of the judgment order. Robinson timely appealed from the order denying his motion for reconsideration.

## II.

### A.

Robinson decided to appeal from the district court's order refusing to reconsider its summary judgment order and not the dispositive order itself. "[B]ecause '[a]n appeal from a timely-filed Rule 59 motion also brings before the appellate court the underlying judgment,' [] we review the district court's decision to grant the defendants' motion for summary judgment as well." *Zucker v. City of Farmington Hills*, 643 F. App'x 555, 561 (6th Cir. 2016) (quoting *Hood v. Hood*, 59 F.3d 40, 43 n.1 (6th Cir.1995) (per curiam)).

The district court dismissed Robinson's Rule 59(e) motion as untimely under the Eastern District of Michigan's local rule 7.1, which requires a motion for reconsideration to "be filed within 14 days after entry of the judgment or order." E.D. Mich. R. 7.1(h). Rule 59(e), however, allows a party to file a motion to alter or amend a judgment "no later than 28 days after the entry

of the judgment." Fed R. Civ. P. 59(e). "A motion for reconsideration under Local Rule 7.1(h) is like a motion to amend judgment under Federal Rule of Civil Procedure 59(e): they both are vehicles for a litigant to ask a court to correct a mistake of law or fact." *Quatrine v. Berghuis*, 751 F. App'x 885, 888 (6th Cir. 2018).

The order granting MGM's motion for summary judgment was entered on June 12, 2019, and Robinson filed his Rule 59(e) motion on July 10, 2019, twenty-eight days after the entry of the judgment. Although Robinson's motion was not timely under Local Rule 7.1, it was timely under Rule 59(e). MGM even recognizes that "the motion was technically timely, and should have been considered by the district court, under Rule 59(e)," but urges us to find the district court's error harmless. (CA6 R. 23, Appellee Br., at 28.) This court has similarly recognized that notwithstanding the fact that a Rule 59(e) motion was filed later than permitted by Rule 7.1, it was still timely under Rule 59(e). *Stephenson v. Malloy*, 700 F.3d 265, 270 n.5 (6th Cir. 2012). Because the Rule 59(e) motion was timely, we proceed to review the district court's decision to grant summary judgment to MGM.

Although we typically review a denial of a Rule 59(e) motion for abuse of discretion, when a Rule 59(e) motion seeks reconsideration of a grant of summary judgment, we review de novo. *Mich. Dessert Corp. v. A.E. Staley Mfg. Co.*, 23 F. App'x 330, 336 (6th Cir. 2001); *Columbia Gas Transmission, Corp. v. Ltd. Corp.*, 951 F.2d 110, 112 (6th Cir. 1991). Summary judgment is proper where the record, viewed in the light most favorable to the nonmoving party, indicates there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A genuine issue of material fact exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "The central issue is 'whether the evidence presents a

sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 506 (6th Cir. 2006) (quoting *Anderson*, 477 U.S. at 251–52).

B.

Robinson challenges the district court's grant of summary judgment on his retaliation claims. We analyze all of Robinson's retaliation claims using the same framework. When a plaintiff presents circumstantial evidence of retaliation in violation of the FMLA, retaliation in violation of the ADA or PWDCRA, or retaliation in violation of Title VII and ELCRA, we apply the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), burden shifting framework. *See Seeger v. Cincinnati Bell Telephone Co.*, 681 F.3d 274, 283 (6th Cir. 2012); *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 703 (6th Cir. 2008); *EEOC v. New Breed Logistics*, 783 F.3d 1057, 1066 (6th Cir. 2015). Under the *McDonnell Douglas* framework, the plaintiff must first set forth a prima facie case of retaliation. *See* 411 U.S. at 802. If he does so, the burden of production shifts to the employer "to proffer some legitimate, nonretaliatory reasons" for the adverse action. *New Breed Logistics*, 783 F.3d at 1066. If the employer makes that showing, the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the proffered reasons by the employer were a pretext for retaliation. *Id.*

"[A] plaintiff making a retaliation claim under [Title VII] must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013); *see also Demyanovich v. Cadon Plating & Coatings, LLC*, 747 F.3d 419, 433 (6th Cir. 2014) (noting that under the ADA "the plaintiff's disability must be a 'but for' cause of the adverse employment action").

The district court determined that Robinson established a prima facie case of FMLA retaliation but failed to provide evidence of a prima facie case of ADA, PWDCRA, Title VII or ELCRA retaliation. After analyzing the second and third steps of the *McDonnell Douglas* framework for the FMLA claim, the district court concluded that MGM asserted a legitimate, nonretaliatory reason for Robinson's termination and Robinson failed to provide sufficient evidence from which a jury could find this reason was pretext. On appeal, Robinson argues that the district court erred by failing to make all inferences in his favor and erred in concluding that his evidence was not sufficient to create a genuine dispute of material fact. We affirm the district court's grant of summary judgment.

1.

Robinson alleged that MGM retaliated against him for taking FMLA leave by firing him shortly after he returned from leave. The district court properly granted MGM summary judgment on Robinson's FMLA retaliation claim because Robinson failed to produce sufficient evidence to create a genuine issue of material fact as to whether MGM's articulated reason for terminating him was pretextual.

"[T]he FMLA . . . affords employees protection in the event they suffer retaliation or discrimination for exercising their rights under the FMLA. Specifically, [a]n employer is prohibited from discriminating against employees . . . who have used FMLA leave, nor can they use the taking of FMLA leave as a negative factor in employment actions." *Marshall v. Rawlings Co.*, 854 F.3d 368, 376 (6th Cir. 2017) (alterations in original) (quoting *Arban v. West Publ'g Corp.*, 345 F.3d 390, 403 (6th Cir. 2003)). Retaliation includes discharging an employee for taking leave. *Id.* To prove that MGM engaged in FMLA retaliation, Robinson must show that taking leave was the causal factor in MGM's decision to fire him. *See JAC Prods., Inc.*, 443 F.3d at 508

("[R]etaliation claims impose liability on employers that act against employees specifically *because* those employees invoked their FMLA rights.").

We must first ask whether Robinson put forth evidence of a prima facie case of FMLA retaliation. To establish a prima facie case, Robinson must show that: (1) "he was engaged in a statutorily protected activity," (2) MGM "knew that he was exercising his FMLA rights," (3) "he suffered an adverse employment action," and (4) "a causal connection existed between the protected FMLA activity and the adverse employment action." *Seeger*, 681 F.3d at 283.

The only dispute here is about the fourth element because MGM approved Robinson's FMLA leave, Robinson took FMLA leave, and he was fired shortly after returning from FMLA leave. "The burden of proof at the prima facie stage is minimal; all the plaintiff must do is put forth some credible evidence that enables the court to deduce that there is a causal connection between the retaliatory action and the protected activity." *Id.* (quoting *Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir. 2007)). We agree with the district court that the temporal proximity between Robinson taking FMLA leave from October 10–25, 2016, and the termination of his employment on November 15, 2016, satisfies the low threshold for a prima facie case of retaliation. *See Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 314 (6th Cir. 2001); *Crawford v. JP Morgan Chase & Co.*, 531 F. App'x 622, 628–29 (6th Cir. 2013).

We also agree with the district court that at the next step of the *McDonnell Douglas* analysis, MGM offered a legitimate, non-discriminatory explanation for Robinson's termination. MGM contends that it fired Robinson pursuant to its employee policy for falsely writing in the time exception log that he worked 6 p.m. to 2 a.m. when he arrived late, did not attempt to clock-in, had to change into his uniform, and was not at the Casino valet station until 6:10. The record contains a copy of MGM's employee policy, and Robinson admitted that MGM informed him he

was terminated due to his violation of this policy at the time of his termination. MGM satisfied its burden to provide a legitimate, non-discriminatory explanation for Robinson's termination.

Having rebutted the presumption raised by Robinson's prima facie case, the final question is whether Robinson produced adequate evidence demonstrating that MGM's proffered reason was a pretext for retaliation. "[A] reason cannot . . . be a pretext for [retaliation] unless it is shown both that the reason was false, and that [retaliation] was the real reason." *Seeger*, 681 F.3d at 285 (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993)). "A plaintiff may establish pretext by showing that the employer's proffered reasons (1) have no basis in fact; (2) did not actually motivate the action; or (3) were insufficient to warrant the action." *Id.* "Whichever method the plaintiff employs, he always bears the burden of producing sufficient evidence from which the jury could reasonably reject [the defendant's] explanation and infer that the defendant [] intentionally discriminated against him." *Id.* (alterations in original) (quoting *Clark v. Walgreen Co.*, 424 F. App'x 467, 474 (6th Cir. 2011)).

Under the first method, the plaintiff attacks the credibility of the employer's proffered reason by showing that the employer did not actually have cause to take the adverse action. *Joostberns v. United Parcel Servs., Inc.*, 166 F. App'x 783, 791 (6th Cir. 2006). Under the second method, the plaintiff admits "the reason could [have] motivate[d] the employer but argues that the illegal reason is more likely than the proffered reason to have motivated the employer" by "offer[ing] evidence sufficient to allow a reasonable juror to find that the employer was motivated by illegal reasons." *Id.* Under the third method, the plaintiff admits the "proffered reason has basis in fact but denies that it created sufficient cause for the adverse employment action." *Id.*

Robinson failed to produce sufficient circumstantial evidence indicating that MGM's proffered reason for his termination was pretextual, and thus, no genuine issue of material fact

exists as to whether Robinson's termination was retaliatory. First, Robinson does not offer evidence demonstrating that the proffered reason for his termination was false. MGM supported its non-discriminatory explanation with evidence such as the time exception log, the internal investigation reports, and a transcript of the due process meeting between Robinson, his union representative, and Parker. Second, Robinson does not produce evidence showing that the proffered reason was insufficient to lead to termination. According to MGM's employee policy, "[a]ny employee who fails to report or inaccurately reports any hours worked will be subject to disciplinary action, up to and including discharge." (DE 43-3, Employee Handbook, PageID 903.)

Robinson argues that MGM's proffered reasons for terminating him did not actually motivate MGM's decision to terminate his employment. To establish pretext Robinson points to three sources of evidence: (1) the timing of his termination, (2) MGM's allegedly different treatment of other employees for the same conduct, and (3) his supervisors' alleged hostility towards employees that take FMLA leave. None of this evidence, however, is sufficient for a reasonable juror to find in his favor.

First, at the final step of the *McDonnell Douglas* framework, "temporal proximity is insufficient in and of itself to establish that the employer's nondiscriminatory reason for discharging an employee was in fact pretextual." *Skrjanc*, 272 F.3d at 317. Thus, Robinson needs to do more than show that MGM decided to suspend him shortly after he received FMLA leave.

Robinson attempts to show pretext by claiming that he was disciplined while other employees who arrived late to work were not punished. Robinson claimed that another employee arrived thirty-five minutes late to work the same day and was not disciplined. At the third step of the *McDonnell Douglas* framework, the burden is on Robinson to present evidence that the proffered reason is pretext. His attempts to shift that burden are unavailing. Robinson did not

identify this employee or provide evidence that the employee inaccurately wrote her time in the exception log. MGM put forth evidence that there was not another valet employee that engaged in similar conduct the same day. Moreover, MGM put forth evidence that other employees who had falsified timeclock records were similarly fired. Robinson's unsupported and rebutted contention is insufficient to create a genuine issue of material fact sufficient to support a claim of pretext. *See, e.g.*, *Bell v. Ohio State Univ.*, 351 F.3d 240, 253–54 (6th Cir. 2003); *Chandler v. Regions Bank*, 573 F. App'x 525, 528–29 (6th Cir. 2014); *Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993).

Additionally, Robinson relies on a meme allegedly posted on Instagram by another MGM employee about FLMA leave in order to support his allegations that Conner disapproved of employees taking FMLA leave. The district court correctly concluded that Robinson's reliance on hearsay and inadmissible and unauthenticated evidence was insufficient to create a genuine issue of material fact. *See Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). Robinson also attempts to support his claim of pretext by pointing to a statement allegedly made by his supervisor, Martinez, "[C]ongratulations on your FMLA approval." Robinson contends that this statement shows Martinez disapproved of his FMLA leave. "Although a supervisor's statements concerning an employee's age, disability, or requested FMLA leave can be probative of discriminatory or retaliatory intent, 'isolated and ambiguous comments are too abstract, in addition to being irrelevant and prejudicial, to support a finding' of unlawful discrimination." *Parkhurst v. Am. Healthways Servs., LLC*, 700 F. App'x 445, 450 (6th Cir. 2017) (quoting *Phelps v. Yale Sec., Inc.*, 986 F.2d 1020, 1025 (6th Cir. 1993)). This comment is both ambiguous and insufficient to prove pretext as Martinez was not one of the decisionmakers who decided to fire Robinson. We thus

affirm the district court's grant of summary judgment to MGM on Robinson's FMLA retaliation claim.

2.

Like Robinson's FMLA claim, his ADA, PWDCRA, Title VII, and ELCRA retaliation claims must also fail because he has failed to produce evidence that there was a causal connection between his internal complaint and his termination.[1][2]

To establish a prima facie case of retaliation for any of the above claims, a plaintiff must show that (1) they engaged in a protected activity; (2) the employer knew of that activity; (3) the employer took an adverse action against the plaintiff; and (4) there was a causal connection between the protected activity and the adverse action. *Rorrer v. City of Stow*, 743 F.3d 1025, 1046 (6th Cir. 2014); *Laster v. City of Kalamzoo*, 746 F.3d 714, 730 (6th Cir. 2014); *Wasek v. Arrow Energy Servs., Inc.*, 682 F.3d 463, 472 (6th Cir. 2012).

"Title VII prohibits an employer from retaliating against an employee who has either: (1) 'opposed any practice made an unlawful employment practice by this subchapter,' or (2) 'made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.'" *New Breed Logistics*, 783 F.3d at 1066 (quoting 42 U.S.C. § 2000e-3(a)). The ADA prohibits employers from "discriminat[ing] against any individual because such individual has opposed any act or practice made unlawful by this chapter." 42 U.S.C. § 12203(a). "Protected activity typically refers to action taken to protest or oppose a statutorily

---

[1] To the extent Robinson attempts to argue a failure to accommodate claim under the ADA on appeal, those arguments fail because Robinson did not allege such a claim in the district court.

[2] Because "[c]ases brought pursuant to the ELCRA are analyzed under the same evidentiary framework used in Title VII cases," we use Title VII to discuss both claims. *Humenny v. Genex Corp.*, 390 F.3d 901, 906 (6th Cir. 2004). Similarly, because "[t]he PWDCRA 'substantially mirrors the ADA, and resolution of a plaintiff's ADA claim will generally, though not always, resolve the plaintiff's PWDCRA claim,'" we use the ADA to discuss both claims. *Donald v. Syba, Inc.*, 667 F.3d 757, 763–74 (6th Cir. 2012); *see also Hurtt v. Int'l Servs. Inc.*, 627 F. App'x 414, 422 (6th Cir. 2015).

prohibited discrimination." *Rorrer*, 743 F.3d at 1046 (quoting *Goonan v. Fed. Reserve Bank of N.Y.*, 916 F. Supp. 2d 470, 484–85 (S.D.N.Y. 2013)).

The district court concluded that Robinson failed to make a prima facie case for any of these claims. On the ADA and PWDCRA claims, the district court concluded that Robinson's letter to HR did not mention Robinson's plantar fasciitis nor allege any discrimination based on this alleged disability. On the Title VII and ELCRA claims, the district court determined that Robinson had not put forth evidence of a causal connection.

First, there is a question whether Robinson's internal complaint is protected activity under the ADA and Title VII. "Vague charge[s] of discrimination" are generally insufficient. *Land v. S. States Coop.*, 740 F. App'x 845, 850 (6th Cir. 2018) (quoting *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1313 (6th Cir. 1989)). But "demand[s] that a supervisor cease his/her harassing conduct," *New Breed Logistics*, 783 F.3d at 1067, or "complaints to management and less formal protests of discriminatory employment practices," *Laster*, 746 F.3d at 730, constitute protected activity. We do not, however, need to answer this question because Robinson's prima facie case fails on the causation prong.

Robinson claims that MGM retaliated against him, in violation of the ADA and Title VII, for filing the internal complaint. Robinson alleges that he proved his termination was motivated by retaliation because he submitted his internal complaint on October 29, 2016 and was notified of his discharge on November 15, 2016. To establish a causal connection, Robinson must establish that but for his submission of the internal complaint, he would not have been terminated. *See, e.g.*, *id.* at 731; *New Breed Logistics*, 783 F.3d at 1070. Robinson has not put forth any evidence other than temporal proximity that MGM fired him because of his letter. The timing shows little about causation here because Robinson acknowledged that he only submitted his internal complaint after

finding out that he was likely to be terminated for his submission of false time records. *See Spengler v. Worthington Cylinders*, 615 F.3d 481, 494 (6th Cir. 2010) (noting that "temporal proximity, standing alone, is not enough to establish a causal connection for a retaliation claim"). Moreover, MGM had already determined to place Robinson on suspension pending investigation prior to receiving his letter. Even if Robinson could satisfy his prima facie burden, his claims still fail for the reasons explained above: he cannot establish that MGM's reason for his termination was pretextual. The district court therefore did not err in granting summary judgment on these claims.

III.

We affirm the district court's grant of summary judgment to MGM on all claims.